MELVIN A. RICE, PROSECUTOR, v. TOWNSHIP OF MIDDLETOWN, IN THE COUNTY OF MONMOUTH.

Argued February 24, 1908—Decided June 8, 1908.

A township committee will not be considered as having abused its discretion in fixing the salary of custodian of school funds at an amount considerably less than would have been paid on a percentage basis under a statute recently repealed.

---

On *certiorari.*

Before Justices REED, PARKER and VOORHEES.

For the prosecutor, *Pitney, Hardin & Skinner.*

For the defendant, *John E. Foster.*

The opinion of the court was delivered by

PARKER, J. The prosecutor is a resident and taxpayer of the township of Middletown, in the county of Monmouth, and at the time of the matters brought under review was chairman of the board of taxes of the school district comprising that township. The custodian of the school funds was Gerardus C. Morris, who in previous years had been paid for his services in disbursing the school funds under a former law at the rate of one and one-half per cent. com-

mission on the amount disbursed, and up to 1906 continued to be paid at that rate, notwithstanding the law of 1903 repealed the percentage law and provided that the custodian should be paid a salary to be fixed by the township committee. *Pamph. L.* 1903, *special session, School law of* 1903, §§ 184, 185.

In 1906 the school district in question issued about $46,-000 in bonds, the proceeds of which were deposited in a bank designated by the board of education and were to be disbursed by the custodian in payment for new school buildings. It was then discovered that the percentage law had been repealed, and the question of the amount of salary to be paid Mr. Morris, as custodian, was brought up before the township committee. Mr. Morris expressed himself as being willing to accept $800 in lieu of some $1,100, which would have been his compensation under the former law. The prosecutor saw him on the subject and tried to get him to agree to turn over half of the difference between his compensation in former years and this $800 to buy books and stationery for the schools, of which the prosecutor said they were in need; and stated that while he thought $800 was entirely too much salary to be awarded for the comparatively insignificant increase of duties called for by the bond issue, the responsibility for its safety having been assumed by the committee, he, the prosecutor, was willing to let the salary be fixed at that amount if Morris would make the division suggested. It was conceded that the prosecutor's only object in asking for the division was to utilize the money for school purposes. Morris refused to make any division, and the prosecutor then said he would oppose the awarding of any such amount by way of salary, but on the night when the township committee acted on the question, the prosecutor was very busy preparing for a trip to Europe and was unable to attend. The township then awarded Morris the salary of $800, as proposed, and the prosecutor prayed a writ of *certiorari* to bring up the ordinance fixing the salary thereon. The matter came before this court on rule to show cause why a writ should not issue, and at the February Term,

1908, upon a stipulation that the depositions taken under the rule to show cause should be considered as taken under the writ and the case submitted at once, a formal writ was awarded and the matter is therefore before this court for final determination.

The reasons pressed by the prosecutor are—*first,* that the ordinance is unreasonable; *second,* that the amount of salary is grossly in excess of reasonable compensation. The third is not pressed. The fourth is merely a general claim of illegality in the ordinance.

A great deal of evidence was taken to show what was paid to other officials in the neighborhood having corresponding or similar duties. This, of course, should have due weight, but we cannot see that the salary in question, even in comparison with these other salaries, is so grossly unreasonable as to show abuse of discretion on the part of the township committee, in view of the evidence which was before that very committee that the law of this state previous to its repeal provided for compensation which would have been from $250 to $300 more than was actually awarded. That law had been in existence for many years, and it would seem to be a fair test of reasonability in judging as to the amount of such salary.

In another consideration raised by the briefs there is more force. It is claimed on the part of the prosecutor that three out of the five members of the township committee were, at the time of passing the ordinance, ignorant of the fact that the percentage law had been repealed, and therefore voted for the $800 salary under the impression that Mr. Morris was entitled by law to about $1,100, and was really giving up about $300 of this for the public benefit. There is considerable testimony to this effect in the depositions; but looking at the evidence as a whole we do not think that the prosecutor has satisfactorily shown this as a fact. It appears in the evidence that Mr. Morris was at the meeting and told the committee that the law had been repealed; and it seems most likely that he should have done so, else there is no satisfactory reason to give for his

applying to have his salary fixed. Moreover, it would seem most unlikely that the township committee should solemnly pass an ordinance fixing the salary of the custodian at the sum of $300 less than the law allowed with any idea that their action would have any legal effect in reducing the compensation and the amount of such salary. In our view of the case, all the probabilities and some of the testimony point to knowledge on the part of the township committee that the law was repealed. We think it was their duty to fix the salary, and that in fixing it they took into consideration what the former law had awarded and adopted Mr. Morris's figure as being fair under the circumstances and a considerable reduction from the former statutory figure.

The writ will be dismissed.